# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:09-CV-103-FDW-DCK

| | |
|---|---|
| HEIDI E. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes now before the Court upon Plaintiff Heidi Hall's Motion For Summary Judgment (Doc. No. 12)[1] and Defendant Commissioner's Motion for Judgment on the Pleadings (Doc. No. 13). The Court has reviewed the motions, briefs, and administrative record, and for the reasons set forth, Plaintiff's Motion for Summary Judgment is DENIED and the Defendant Commissioner's Motion for Judgment on the Pleadings is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff Heidi Hall, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. On or about July 7, 2004[2], Plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 405, alleging she became disabled on December 29, 2003. (Tr. 50-52). Plaintiff's claim was denied initially on October 15,

---

[1] Plaintiff's "Brief in Support of Motion for Summary Judgment" (Doc. No. 12-1) references an individual who is not the Plaintiff in its caption. The Court assumes such error was clerical because the body of the memorandum appears to address the facts and history concerning Plaintiff Heidi Hall's claim.

[2] Plaintiff states that she filed her application on July 7, 2004, (Doc. No. 12-1 at 1) and the Defendant's brief indicates that the application was filed on June 3, 2004 (Doc. No. 13-1 at 1). A review of the record (Tr. 50) reveals that the application was created June 3, 2004, but was stamped received on July 7, 2004.

2004, (Tr. 38-41) and again upon reconsideration on January 21, 2005. (Tr. 34-36). Plaintiff then requested an administrative hearing and on March 5, 2007, a hearing was held before Administrative Law Judge Todd Jacobson (ALJ). (Tr. 380-419). Plaintiff, who was represented by counsel, appeared and testified at the hearing. Id. On April 10, 2007, the ALJ issued his findings of fact and conclusions of law, and ultimately denied Plaintiff benefits. (Tr. 9-22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's Request for Review on January 16, 2009. (Tr. 5-8). Plaintiff, who has exhausted her administrative remedies, filed this action on March 12, 2009, and the parties' motions for summary judgment and judgment on the pleadings are ripe for the Court's review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants this Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." § 405(g). It is this Court's duty to determine both whether the Commissioner's findings are "supported by substantial evidence and whether the correct law was applied." Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing Perales, 402 U.S. at 401). The Fourth Circuit has recognized "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function

2

to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. The Court may set aside a determination of the ALJ if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between December 29, 2003, and the date of his decision.[3] To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

On April 10, 2007, the ALJ found that Plaintiff was not "disabled" under the Social Security Act at any time between December 29, 2003, and the date of his decision. (Tr. 12). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. (20 C.F.R. § 404.1520(a)). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[3] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

(20 C.F.R. § 404.1520(a)(4)(i-v)). In this case, the ALJ determined at the fifth step that Plaintiff was *not* disabled.

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity after her alleged disability onset date. (Tr. 14). At the second step, the ALJ found that Plaintiff's depressive order, an anxiety disorder, hypoxic brain injury with decline in neurocognitive functioning, borderline IQ and headaches, were "severe" impairments.[4] (Tr. 14). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity "to perform simple, routine, repetitive tasks at a non-production pace in a work setting where she has limited social contact, and no concentrated exposure to hazards such as moving machinery and no concentrated exposure to noise." (Tr. 15). In making this finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medial evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and SSRs 96-4p and 96-7p. (Tr. 15). The ALJ also considered opinion evidence in accordance with the

---

[4]The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

requirements of 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 15). At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 20).

At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21-22). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included laundry laborer jobs, marker jobs in private laundries, and hand packing jobs. (Tr. 21, 408-417). Therefore, the ALJ concluded that Plaintiff was not under a "disability," at any time between December 29, 2003, and the date of his decision, April 10, 2007. (Tr. 22).

Plaintiff on appeal to this Court contends the ALJ committed reversible error by: (1) "fail[ing] to consider [P]laintiff's deficits in ability to use her hands"; and (2) "not ask[ing] questions that ensured the [V]ocational [E]xpert [("VE")] knew what the claimant's abilities and limitations were." (Doc. No. 12-1 at 2). The undersigned will discuss these contentions in turn.

### A. ALJ's Consideration Of Impairments

In her first assignment of error, Plaintiff contends that the ALJ failed to adequately consider Plaintiff's difficulties with her hands, particularly the non-dominant left one, at any stage of the sequential evaluation. (Doc. No. 12-1 at 3-4). Plaintiff contends that there is no evidence the ALJ considered any exertional limitation (id. at 5-6.), and specifically that the ALJ failed to tell the VE "how the hand impairment. . . [would] affect[] [P]laintiff's ability to perform in the workplace . . . ." Id. at 5-6.

After reviewing the record, the Court cannot agree with Plaintiff's argument. The ALJ and the VE had an exchange during the hearing about Plaintiff's "weakness in the left hand," and the VE stated this weakness "could be a problem with the packing although these jobs are done in a more of a careful nature rather than a fast nature . . . I don't think it would rule out the other two jobs I mentioned." (Tr. 410). Plaintiff acknowledges this exchange, but argues that the VE's mention of "weakness in the left hand" is not a substitute for the residual functional analysis required to be completed by the ALJ. Although the ALJ did not directly address any limitation of Plaintiff left hand in his written decision, it appears the ALJ adequately considered Plaintiff's abilities in his findings.

Specifically, the ALJ discussed in detail Dr. Batchelor's report and noted that "the results [of testing] confirmed that the claimant does have impaired cognition with Bi-hemispheric involvement. It was Dr. Bachelor's opinion that the degree of decline appeared to be moderate." (Tr. 18). A review of the record indicates the basis for Dr. Bachelor's opinion involved a series of test, one of which included a "tactual performance test." This test indicated that Plaintiff's "tactual spatial integration abilities were in the borderline range of functioning for the right hand and in the low average range of functioning for the left hand." (Tr. 204). The test furthered indicated that Plaintiff's "[f]ine motor speed and dexterity . . . was in the borderline range of functioning for the dominant and non-dominant hands." (Tr. 204). Meanwhile, "[g]rip strength was equal bilaterally for the dominant and non-dominant hands." (Tr. 204). Considering this, it cannot be said the ALJ failed to consider Plaintiff's "weakness in her left hand" because the ALJ devoted significant discussion to Dr. Batchelor's report and opinion, which was based in part on the testing conducted on Plaintiff's hands.

Additionally, the ALJ recited the findings of both Dr. Burke, a Duke University physician who conducted an evaluation of Plaintiff's neurocognitive functioning (Tr. 18), which found Plaintiff exhibited a "pattern of cognitive problems. . . consistent with a hypoxic insult with problems in attention, concentration, judgment and sequencing, but . . . no signs of neurodegenerative disease or focal findings to suggest a cerebrovascular infarction." (Tr. 18, 215). Dr. Burke's examination of Plaintiff did not reveal abnormalities with respect to cranial nerves, motor function, coordination, and reflexes. (Tr. 215). The ALJ further relied upon a report of John K. Warnken, a consultative examiner, observing "[]other than moving slowly there were no problems noted with posture, motor activity or gait." (Tr. 18, 223) The ALJ also acknowledged Plaintiff's statement that she was still "able to perform simple cooking tasks, simple household chores and use simple appliances without problems." (Tr. 18, 213).

All of this evidence is consistent with the ALJ's RFC assessment that Plaintiff could "perform simple, routine, repetitive tasks at a non-production pace in a work setting where she has limited social contact, and no concentrated exposure to hazards such as moving machinery and no concentrated exposure to noise." (Tr. 15). Considering this, the Court is not persuaded by Plaintiff's argument that the ALJ failed to consider the Plaintiff's ability to use her hands.

Even if the Court were persuaded by Plaintiff's argument that the ALJ failed to consider Plaintiff' ability to use her hands, the Court finds such error was harmless. There is additional and substantial evidence that supports the ALJ's finding that there are jobs in the economy that Plaintiff could perform and that the RFC finding is appropriate even without express mention of any hand limitations. (Tr. 410).

Based on the foregoing, the undersigned concludes that the ALJ relied on substantial evidence in his consideration of Plaintiff's impairments and the weight to give both severe and non-

severe impairments.

B.      **ALJ's Consideration Of Vocational Expert Testimony**

Next, Plaintiff contends the ALJ erred because he "did not ask questions that ensured that the vocational expert knew what the claimant's abilities and limitations were." (Doc. No. 12-1 at 7). Plaintiff relies in part on Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989), in claiming that the ALJ's hypothetical questions of the VE were inadequate. Id. As described in Plaintiff's brief, the undersigned finds the ALJ's hypotheticals in the instant case readily distinguishable from those addressed in Walker. Here, the hypotheticals were significantly more detailed and specific than those critiqued by the Fourth Circuit in Walker. Rather, the hypotheticals in this case appear to be more similar to those found acceptable in Johnson and Fisher, than those criticized by Walker. See Johnson v. Barnhart, 435 F.3d 650, 659 (4th Cir. 2005); see also Fisher v. Barnhart, 181 Fed. App'x 359, 363 (4th Cir. 2006).

Contrary to Plaintiff's assertions, careful review of the hearing transcript indicates that the VE was keenly aware of Plaintiff's abilities and limitations. (Tr. 408-415). As noted above, the VE, without prompting from the ALJ or Plaintiff's counsel, addressed the issue of Plaintiff's alleged weakness in her non-dominant left hand. (Tr. 410). Not only were the ALJ hypotheticals satisfactory, but the VE also referenced notes the VE had taken on Plaintiff's abilities during the hearing. (Tr. 410).

Plaintiff further argues that the ALJ failed to indicate to the VE how any of Plaintiff's impairments affected Plaintiff's ability to work. (Doc. No. 12-1 at 8). The undersigned agrees with Defendant's analysis that the case law does not mandate that an ALJ delve into a Plaintiff's medical impairments or symptoms in questioning the VE. (Doc. No. 13-1 at 15-16) (citing Johnson, 435

8

F.3d at 659; see also Fisher, 181 Fed. App'x at 363 ("a hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence . . . it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert."). Since the Court has concluded that the ALJ's decision is supported by substantial evidence and that the proper law was applied, Plaintiff's contention is without merit.

Plaintiff also argues that the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles (DOT) and the VE's testimony as required by SSR 00-4p. In support of this contention, Plaintiff points out specific problems contained in the descriptions of jobs identified by the VE, which Plaintiff believes does not pair with Plaintiff's limitations.

As an initial matter, the ALJ inquired whether the VE's testimony was consistent with the DOT, and the VE answered in the affirmative. However, at that time and even later in the hearing, Plaintiff did not raise any objection as to the supposed conflicts now argued between the VE's testimony and the DOT. (Tr. 408-417). As the Tenth Circuit Court of Appeals has held:

> [t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so . . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

Gibbons v. Barnhart, 85 Fed. App'x 88, 93 (10th Cir. 2003) (emphasis added) (quoting Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000)); see also Masterson v. Barnhart, 309 F.3d 267, 273-274

(5th Cir. 2002); Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002).

Even if Plaintiff had raised such an objection, the Court has reviewed the DOT descriptions for the laundry laborer (DOT Code 361.687-018), marker (DOT Code 369.687-026), and packer (DOT Code 920.587-018), and does not find that any apparent conflict existed. Many of the arguments submitted by Plaintiff on this point seem to assume that the ALJ found Plaintiff credible as to the intensity, persistence, and limiting effects of her symptoms, but the ALJ did not fully accept the Plaintiff's allegations. This credibility determination was fully detailed and supported by substantial evidence in the record. (Tr. 19). However, with regard to some limitations, such as no concentrated exposure to hazards such as moving machinery and no concentrated exposure to noise, the ALJ recognized that "claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations." (Tr. 21). The ALJ, relying on the VE's testimony, concluded Plaintiff would be able to perform the requirements of the jobs identified in light of these limitations. The ALJ properly relied on the testimony of the VE in reaching this conclusion. See Masterson, 309 F.3d at 267; see also Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."). As a result, this Court rejects Plaintiff's argument and finds that the ALJ's findings are supported by substantial evidence in the record and that the ALJ did not commit any legal error.

## IV. CONCLUSION

Based on the foregoing reasons, the Court finds the Commissioner's decision denying benefits was based on substantial evidence and applied the correct legal standards. Therefore, Plaintiff's Motion for Summary Judgment is DENIED (Doc. No. 12), and the Commissioner's Motion for Judgment on the Pleadings is GRANTED. (Doc. No. 13). Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: September 29, 2010

Frank D. Whitney
United States District Judge